IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| J.S., (a minor child by and through his father and next friend, John Searight), | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Case No. 02:05-cv-928-T |
| | * | |
| Officer Curt Campbell, in his individual capacity, | * | |
| | * | |
| | * | |
| Defendant. | * | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM BRIEF IN SUPPORT THEREOF**

COMES NOW Defendant, Curt Campbell, and moves the Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant supports his motion for summary judgment with the following:

1.    Pleadings;

2.    Argument in support of Defendant's motion for summary judgment;

3.    Deposition of J.S., Exhibit 1;

4.    Deposition of Curt Campbell, Exhibit 2;

5.    Deposition of John Searight, Exhibit 3;

6.    Deposition of Alecia Searight, Exhibit 4.

## NARRATIVE SUMMARY OF UNDISPUTED FACTS

On May 15, 2005, Officer Curt Campbell was patrolling the city as a police officer for the town of Fort Deposit. (Exhibit 1, p. 42, ll. 13-23; Exhibit 2, p. 29, ll.14-19).  Officer Campbell's regular patrol area included North Pollard Street, and the surrounding neighborhood in Fort Deposit, where Plaintiffs resided. (Exhibit 4, p. 15, ll. 1-5). Plaintiffs were familiar with Officer Campbell as he was regularly seen patrolling the area. (Exhibit 4, p. 15, ll. 1-5). The minor Plaintiff, J.S., nicknamed "Candy Man", had also had numerous encounters with Officer Campbell, including an incident where J.S. was caught with other children "flipping" the breaker switches outside the houses in his neighborhood, and an incident where J.S. was caught burning clothing on the sidewalk. (Exhibit 1, p. 17, line 1–p. 20, line 2; p. 116, ll. 1-21). Officer Campbell had also received several complaints from citizens against the Plaintiff: one citizen complained that Candy Man had thrown rocks at his dogs and shot at his dogs with a BB gun, one complained that Candy Man had groped a female student at school, there was a complaint that Candy Man slapped another juvenile at an arts and crafts festival, and several complaints regarding Candy Man cursing both adults and juveniles. (Exhibit 2, p. 78, line 6 – p. 83, line 6).

At approximately 7:30 p.m. on May 15, 2005, Officer Campbell was patrolling the Plaintiffs' neighborhood. (Exhibit 2, p. 29, ll. 14-19). As he was driving down North Pollard Street, he drove past several adults and minors standing and sitting around a card table. (Exhibit 2, p. 35, ll.1-18). One of the minors, who turned out to be "Candy Man", raised his middle fingers in an obscene gesture as Officer Campbell drove past. (Exhibit 1, p. 53, line 4–p. 54, line 3 ; Exhibit 2, p. 33, line 3–p. 34, line 1).  Officer Campbell drove past, turned around, and returned to where the minor was standing.  (Exhibit 2, p. 35, line 16–p. 36, line 23).

There is a good deal of disagreement about what occurred next between Officer Campbell and Candy Man, but it is undisputed that Officer Campbell exited his police cruiser and approached the group. (Exhibit 1, p. 57, ll. 1-16). Officer Campbell explained to Candy Man that the gesture he made was disrespectful and could get him into trouble.  (Exhibit 1, p. 57, ll. 17-23).  Candy Man then became belligerent; Officer Campbell told him to be quiet several times, but  he refused. (Exhibit 1, p. 57, line 1–p. 59, line 9). Candy Man's physical movements and actions toward Officer Campbell are disputed; however, both parties agree that the result of the altercation was that Officer Campbell restrained the minor. (Exhibit 1, p. 59, line 2–p. 63, line 5).  Candy Man continued to struggle with Officer Campbell, and Officer Campbell placed hand cuffs on him. (Exhibit 1, p. 62, ll.2-17).  At this time, Candy Man's parents came out of their house and told Officer Campbell to remove the handcuffs. (Exhibit 3, p. 25, ll.1-23).  Thereafter, Candy Man calmed down and Officer Campbell removed the hand cuffs. (Exhibit 3, p. 20, line 21–p. 21, line 2).

The Plaintiff has now filed this lawsuit alleging both federal and state claims. (Complaint). After Defendants requested  a more definite statement,  Plaintiff filed a more definite statement stating that the only federal cause of action alleged is a violation of the Fourth Amendment of the United States Constitution. (Plaintiff's Response to Motion for More Definite Statement). Plaintiff has also asserted a claim for violation of Plaintiff's First Amendment right to free speech, and causes of action for negligence, assault and battery, under state law. (Amended Complaint).

## SUMMARY JUDGMENT STANDARD

Summary judgment must be entered on a claim if it is shown "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, although the Court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970), "the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party that fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Furthermore, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).

4

**ARGUMENT**

I.     **PLAINTIFF'S FIRST AMENDMENT AND FOURTH AMENDMENT EXCESSIVE FORCE CLAIMS ARE DUE TO BE DISMISSED AS OFFICER CAMPBELL IS ENTITLED TO QUALIFIED IMMUNITY**

     A.    <u>Law</u>

The United States Supreme Court has stated that "all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395, (1989).  The reasonableness inquiry is an objective test.  The question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham,* 490 U.S. at 397.  The reasonableness test under the Fourth Amendment is not capable of precise definition, therefore, its application requires careful attention to the facts and circumstances of each case.  *Graham,* 490 U.S. at 396.  Reasonableness is judged:

> from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight....  With respect to a claim of excessive force ... not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, ... violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances – that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Graham,* 490 U.S. at 396-97 (internal citations omitted).

The right to make an arrest, seizure, or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect. *Id.* Painful handcuffing, by itself, is not excessive force in cases where the resulting injuries are minimal. *Rodriguez v. Farrell*, 280

5

F. 3d 1341, 1352 (11th Cir. 2002). Further, an officer's decision not to arrest a person against whom force has been applied does not render the application of that force per se excessive. *Bullard v. Finley*, 2005 U.S. Dist. LEXIS 37961 (M.D.Ala. December 29, 2005), citing *Jones v. Dothan*, 121 F. 3d 1456 (11th Cir. 1997). While Defendant strongly denies that Plaintiff's constitutional rights were violated, the Court may find that there is a question of fact as whether Officer Campbell's initial contact with Plaintiff was objectively reasonable[1]. However, the federal constitutional claims against Officer Campbell must still be dismissed as the officer is clearly entitled to immunity.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In effect, qualified immunity "allow[s] government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Id*. The analysis of qualified immunity is undertaken utilizing a two-part analysis set forth by the United States Supreme Court. Under the analysis, [t]he threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). "If a constitutional right would have been violated under the

---

[1] Defendant is not waiving any arguments as to the reasonableness of Officer Campbell's actions, and further believes that the testimony on this issue will show that he only restrained Plaintiff after he was hit and attacked by Plaintiff. However, for the purposes of this Brief, Defendant will only rely upon facts that are uncontested by Plaintiff. It is Defendant's position that the uncontested material facts still show a clear entitlement to immunity from Plaintiff's claims, and summary judgment is appropriate.

plaintiff's version of the facts, the 'next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Qualified immunity applies unless application of the standard would inevitably lead every reasonable officer in the position of the defendant officer to conclude the force was unlawful. *Nolin v. Isbell*, 207 Fo. 3d 1253, 1255 (11th Cir. 2000)**.** See also *Post v. City of Fort Lauderdale***,** 7 F. 3d 1552, 1559-60 (11th Cir. 1993)(holding that, while there was no more need for force after the defendant had been placed in a choke-hold and handcuffed, the fact that he was pushed into a wall did not make the force unlawful and, therefore, the officer involved was entitled to immunity).

Furthermore, there is no bright line rule for identifying force as excessive. *Graham, supra at* 396. Therefore, unless a controlling and factually similar case declares the official's conduct unconstitutional, an excessive force plaintiff can overcome qualified immunity only by showing that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw. *Smith v. Mattox*, 127 F. 3d 1416, 1419 (11th Cir. 1997) (citations omitted).

B.    Officer Campbell is entitled to qualified immunity

Officer Campbell is entitled to qualified immunity. In the context of an alleged Fourth Amendment violation, qualified immunity applies whenever there was <u>arguable</u> probable cause for a search or seizure, even if actual probable cause did not exist. *Jones v. Cannon*, 174 F.3d. 1271, 1285 n. 3 (11th Cir. 1999). Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity analysis. Arguable probable cause exists if, under all the facts and circumstances, an officer reasonably could - - not necessarily would - - have believed that probable cause was present. *Durruthy v. Pastor*, 351 F.3d. 1080, 1089 (11th Cir. 2003). Thus,

7

"even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

In the present case, the seizure of Plaintiff was legal under the Fourth Amendment. However, even if it could be argued that the officer did not have actual probable cause for the seizure, an officer may, consistent with the Fourth Amendment, effect such a seizure or an investigatory stop when the officer has reasonable, articulable suspicion that criminal activity is afoot. *Illinois v. Wardlow*, 528 U.S. 119 (2000). As set out above, Officer Campbell saw with his own eyes the obscene gesture made in his direction by Plaintiff, and Plaintiff does not dispute that he made the gesture in a public place. (Exhibit 1, p. 53, line 4–p. 54, line 3 ; Exhibit 2, p. 33, line 3–p. 34, line 1). Alabama Code 1975 Section 13A-11-7 makes it a crime to "make an obscene gesture" in a public place. Under Alabama law, disorderly conduct is defined as:

§ 13A-11-7. Disorderly conduct

(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) Engages in fighting or in violent tumultuous or threatening behavior; or

(2) Makes unreasonable noise; or

**(3) In a public place uses abusive or obscene language or makes an obscene gesture; or**

(4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or

(5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or

(6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.

Thus, it is clear that Officer Campbell had at least arguable probable cause to perform an

8

investigatory stop and seizure. As can be seen, taking facts in the light most favorable to Plaintiff, Campbell had objective reason to believe that Plaintiff had committed a crime and his actions warranted at least a brief detention. While Campbell could have simply chosen to "ignore" Plaintiff's crime, he believed a misdemeanor had been committed in his presence and he certainly had no obligation to do so. It is undisputed based on his testimony that Officer Campbell believed that he had actual probable cause to stop or arrest Plaintiff on disorderly conduct charges:

> Q.    Right. Is there a crime called flipping the bird?
>
> A.    No. It's making an obscene gesture. I'm not sure–that may fall under the disorderly conduct act or so.
>
> \*    \*    \*
>
> Q.    ...May 15, 2005. Was it a crime on that date or did you think it was a crime on that date?
>
> A.    Yes, sir.
>
> Q.    And again, the crime would be what, disorderly conduct?
>
> A.    Yes, sir.

(Exhibit 2, p. 71, line 23 – p. 72, line 23).

The undisputed material facts do not show that Officer Campbell's actions were objectively unreasonable under the Fourth Amendment, or so unreasonable that an officer faced with Campbell's situation would have inevitably believed the force used was unlawful. Accordingly, this Defendant is entitled to qualified immunity.

Officer Campbell is also entitled to qualified immunity as to Plaintiff's First Amendment claim. Plaintiff claims that Officer Campbell's actions as a police officer in stopping, approaching him, restraining him, and handcuffing him violated his First Amendment rights because he was only exercising "his right under the First Amendment to express himself". (Amended Complaint,

9

paragraph 20). However, this claim has no merit because Plaintiff's "expression" was in violation of state law, *Ala. Code* 1975 § 13A-11-7.

While the criminal courts of this state have held that evidence of making an obscene gesture toward a police officer is insufficient to find a criminal defendant guilty of disorderly conduct under the Alabama statute, the statute still reads to prohibit such gestures. *H.N.P. v. State*, 854 So. 2d 630 (Ala. Crim.App. 2003). Therefore, Officer Campbell had arguable probable cause to arrest Plaintiff, and is entitled to qualified immunity as to Plaintiff's First Amendment claim.

In *Gold v. City of Miami*, 121 F. 3d 1442 (11th Cir. 1997), police officers arrested the plaintiff for disorderly conduct after plaintiff had stated in the officers' presence that "Miami police don't do shit". *Id.* at 1444. Plaintiff sued for violation of his First, Fourteenth, and Fourth Amendment rights. While the Court held that the officers did not have actual probable cause to arrest plaintiff under Florida's disorderly conduct statute[2], the Court held that the officers nonetheless were entitled to qualified immunity:

> We pause at this point to reemphasize that the arguable probable cause inquiry is distinct from the actual probable cause inquiry. It is clear from the facts viewed in the light most favorable to Gold that the officers did not have actual probable cause to arrest Gold for disorderly conduct. That said, the officers nonetheless are entitled to qualified immunity. As the Supreme Court has stated, "the qualified immunity standard gives ample room for mistaken judgments..."See *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct 534, 537, 116 L.Ed. 2d 589 (1991).

---

[2] Florida statutory law defined disorderly conduct as "acts [that]...are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or ...brawling or fighting, or ...conduct [that] constitutes a breach of the peace of disorderly conduct..." Fla. Stat. §877.03 (1994). To avoid First Amendment concerns in cases involving speech, the Florida Supreme Court had strictly limited the law to apply in such cases only where the speech, by its very utterance, "inflicts injury or tends to incite an immediate breach of the peace..." *Gold*, at 1445 (citations omitted).

*Gold,* at 1446.

Here, it is equally clear that Officer Campbell is entitled to qualified immunity. Like the officers in *Gold*, Officer Campbell certainly had arguable probable cause to arrest the Plaintiff on disorderly conduct charges. Thus, Officer Campbell is entitled to summary judgment on Plaintiff's First Amendment claim.

## II.    PLAINTIFF'S STATE LAW CLAIMS ARE DUE TO BE DISMISSED

Plaintiff's state law claims are also due to be dismissed. Under Alabama law, assault is

defined as: an intentional, unlawful offer to touch the person of another in a rude or angry

manner under such circumstances as to create in the mind of the party alleging the assault a well-

founded fear of an imminent battery, coupled with the apparent present ability to effectuate the

attempt, if not prevented. *Wright v. Wright,* 654 So.2d 542, 544 (Ala.1995) (quoting *Allen v.*

*Walker,* 569 So.2d 350, 351 (Ala.1990)). A battery is a successful assault, and consists of

touching another in a hostile manner. *Surrency v. Harbison,* 489 So.2d 1097, 1104 (Ala.1986).

It is clear that Plaintiff was not assaulted. The encounter Plaintiff had with Defendants was

based on at least arguable probable cause, and therefore cannot be said to be unlawful.

Therefore, as a matter of law, Plaintiff's assault and battery claims fail[3].

## III.    DEFENDANT IS ENTITLED TO DISCRETIONARY FUNCTION IMMUNITY

Officer Campbell is also entitled to discretionary function immunity for Plaintiff's claims

---

[3] Plaintiff's negligence claim is due to be dismissed based on Officer Campbell's discretionary function immunity, discussed *infra*.

arising under Alabama law. In 1994, the Alabama Legislature enacted Ala. Code § 6-5-338,

which provides, in pertinent part, as follows:

> (a)    Every peace officer, except constables, who is employed or
> appointed pursuant to the Constitution or statutes of this
> state, whether appointed or employed as such peace officer
> by the state or a county or municipality thereof, or by an
> agency or institution, corporate or otherwise, created
> pursuant to the Constitution or laws of this state and
> authorized by the Constitution or laws to appoint or employ
> police officers or other peace officers, and whose duties
> prescribed by law, or by the lawful terms of their
> employment or appointment, include the enforcement of, or
> the investigation and reporting of violations of, the criminal
> laws of this state, and who is empowered by the laws of
> this state to execute warrants, to arrest and to take into
> custody persons who violate, or who are lawfully charged
> by warrant, indictment, or other lawful process, with
> violations of, the criminal laws of this state, shall at all
> times be deemed to be officers of this state, *and as such
> shall have immunity from tort liability arising out of his or
> her conduct in performance of any discretionary function
> within the line and scope of his or her law enforcement
> duties.*
>
> (b)    This section is intended to extend immunity only to peace
> officers and governmental units or agencies authorized to
> appoint peace officers....

*Ala. Code* § 6-5-338 (emphasis added).

To apply discretionary function immunity, a court must first determine whether the police

officer was performing a discretionary function when the alleged wrong occurred. If so, the burden

shifts to the plaintiff to demonstrate that the defendant acted in bad faith, with malice or willfulness

in order to deny him immunity. *Bullard, supra,* at *22, citing *Scarbrough v. Myles*, 245 F. 3d 1299,

1303 n.9 (11th Cir. 2001) (alteration in original)(applying Alabama law and quoting *Sheth v. Webster*, 145 F. 3d 1231, 1239 (11th Cir. 1998) (per curiam).

Alabama law defines "discretionary acts" as "[t]hose acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take and those requiring exercise in judgment and choice and [involving] what is just and proper under the circumstances. *L.S.B. v. Howard*, 659 So.2d 43, 44 (Ala. 1995). Discretionary acts require "constant decision making and judgment." *Phillips v. Thomas*, 555 So. 2d 81, 85 (Ala. 1989). The Alabama Supreme Court further noted that § 6-5-338 extended discretionary immunity to a municipal police officer "unless the officer's conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." *Wright v. Wynn*, 682 So. 2d 1 (Ala. 1996). Simply stated, the statute "shields every defendant who (1) is a 'peace officer' (2) is performing 'law enforcement duties', and (3) is exercising judgment or discretion." *Howard v. City of Atmore*, 887 So. 2d 201, 204 (Ala. 2003).

It is undisputed that Officer Campbell qualifies as a "peace officer", and was performing law enforcement duties. Further, there is no evidence of the malice, willfulness, or bad faith required to overcome the immunity granted by the statute. An officer is entitled to discretionary function immunity if the officer's acts occurred in the line and scope of his duties as a police officer, and when decisions must be made where there are no hard and fast rules as to the course of conduct one must or must not take, absent malice or willful conduct. *Bullard,* supra. Therefore, Officer Campbell is entitled to immunity and Plaintiff's state law claims are due to be dismissed.

## **CONCLUSION**

There is no material factual evidence to support Plaintiff's claims asserted under state or

14

federal law. Even if such evidence did exist, Officer Campbell is entitled to qualified and discretionary function immunity. As there is no dispute of material fact and the Defendant is entitled to judgment as a matter of law, summary judgment is due to be granted in favor of Defendant as to each claim brought by the Plaintiff in this action.

Respectfully submitted this the 16ᵗʰ day of June, 2006.


   /s/ Rick A. Howard
ALEX L. HOLTSFORD, JR. (HOL048)
RICK A. HOWARD (HOW045)
APRIL W. McKAY (WIL304)
Attorneys for Curt Campbell


OF COUNSEL:
Nix Holtsford Gilliland
        Higgins & Hitson, P.C.
P.O. Box 4128
Montgomery, AL 36103-4128
(334) 215-8585

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day sent by mail, postage prepaid, an exact copy of the foregoing document to:

Jay Lewis
Andy Nelms
847 S. McDonough Street
Montgomery, Alabama 36104


This the __16th _day of June, 2006.


___/s/ Rick A. Howard_____
OF COUNSEL

16