IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| J. S. (a minor child, by and through his father and next best friend, John Seawright), | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Case No. 2:05-cv-928-WKW |
| Officer Curt Campbell, in his individual capacity, | * * * | |
| Defendant. | * | |

**PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff in the above styled cause, by and through his counsel of record and responds to the Defendant's motion for summary judgment as follows:

**Introduction.**

The Plaintiff, J.S., brings this suit against Curt Campbell, a police officer with the City of Fort Deposit, Alabama. He alleges causes of action pursuant to 42 U.S.C. §1983 and state law causes for negligence, trespass and assault. In short, the Defendant is alleged to have unlawfully detained and choked the Plaintiff.

**Statement of Facts.**

On May 15, 2005 the Plaintiff, a one-hundred pound thirteen year old child, was at the home of his uncle with family members. (Ex. 2 Campbell Depo. 72:12-16)( Ex. 1 J.S. Depo. 42:2-6)(Ex. 5 Incident Report). The Plaintiff was outdoors, within the curtilage of his uncle's home, with two other minors and three adults who were playing cards. (Ex. 1 J.S. Depo. 42:2-17)(Ex. 2 Campbell Depo. 38:1-9). The Plaintiff was talking and joking with family members at the time. (Ex.1 J.S.

Depo. 49:7-23).

The Defendant was on duty for the city of Ft. Deposit and while on patrol traveled north onto Pollard Street. (Ex. 2 Campbell Depo 29:16-30:13). While at the intersection of Pollard and Walker Mason the Defendant noticed an individual gesturing in his direction. (Ex. 2 Campbell Depo32:7-33:17). The Defendant stated that the Plaintiff intentionally gestured with both middle fingers at the Defendant aiming the gesture directly at the police car. (Ex. 2 Campbell Depo. 73:1-13). The Defendant stated that he continued to travel on North Pollard street and then turned around on Lawhorn Street and went back to where the Plaintiff was playing. (Ex. 2 Campbell Depo. 34:8 - 35:3).

The Defendant parked his patrol car on the roadway in front of the home where the Plaintiff was still standing. (Ex. 2 Campbell Depo. 38:1-7). The Defendant exited the patrol car and approached the table where the Plaintiff and his relatives were congregated. (Ex. 2 Campbell Depo 37:10-12). The Defendant spoke to the adults and then focused on the Plaintiff. (Ex. 2 Campbell Depo. 38:12-19).

The Defendant approached the Plaintiff and told him that somebody was going to hurt the Plaintiff if he did not change his ways. (Ex. 1 J.S. Depo. 57:17-20). The Plaintiff responded to this by saying "hmm" and walking away. (Ex. 1 J.S. Depo. 57:21-22). The Defendant then told the Plaintiff not to open his mouth any more and the Plaintiff said something else. (Ex. 1 J.S. Depo. 57:22-58:23). The Defendant then attempted to arrest the Plaintiff by seizing him and placing him in handcuffs. (Ex. 1 J.S. Depo. 59:11-22). The Plaintiff broke free from the Defendant's grip, but the Defendant grabbed the Plaintiff by the neck and placed him in a choke hold. (Ex. 1 J.S. Depo. 60:9-62:5)(Ex. 2 Campbell Depo 43:16-23). The Defendant told the Plaintiff he was going to put

him to sleep. (Ex. 1 J.S. Depo. 62:8-9, Ex.4 John Seawright Sr. Depo. 21:3-20). The Defendant applied the choke hold until the Plaintiff passed out. (Campbell Depo. 43:20-44:4, Plaintiff's 2nd Amended Complaint Doc. 23 P. 3 ¶ 13). Once the Plaintiff quit moving the Defendant handcuffed the Plaintiff, hands behind the back. (Ex.1 J.S. Depo. 62:16-17, Ex. 2 Campbell Depo. 44:13-17, Ex. 3 Alecia Seawright Depo. 16:21-17:3).

Once the Defendant had the Plaintiff handcuffed, he instructed one of the Plaintiff's relatives to go and get the Plaintiff's parents. (Ex. 2 Campbell Depo. 46:14-47:3). The Defendant then moved the Plaintiff to the vicinity of his patrol car . (Ex. 2 Campbell Depo 47:6-8). The Plaintiff's parents arrived on the scene to find the Plaintiff crying, bruised, swollen, and with foam coming from his mouth. (Ex. 3 Alecia Seawright Depo. 16:21-17:3, Ex. 4 John Seawright Sr. Depo. 18:5-23). Mr. Seawright, the Plaintiff's father, asked the Defendant to remove the handcuffs, but the Defendant refused this request. After a five to six minute discussion the Defendant agreed to take the handcuffs off the Plaintiff and let him go home. (Ex. 2 Campbell Depo. 52:16-20, Ex. 4 John Seawright Sr. Depo. 21:1-1-2). No criminal charges were ever filed against the Plaintiff relating to this incident. (Ex.2 Campbell Depo. 57:20-58:1, Ex 5 Incident/Offense Report).

Immediately after the encounter with the Defendant, the Plaintiff was having trouble breathing and was limping as he attempted to return to his home so his parents physically carried him home. (Ex.3 Alecia Seawright Depo. 19:12-20:17, Ex. 4 John Seawright Sr. Depo. 29:11-23, Ex.1 J.S. Depo, 72:17-73:9). Once the Plaintiff's parents got him home they laid him on a sofa and called for an ambulance because of the bruising and swelling of his neck as well as his breathing difficulty. (Ex.3 Alecia Seawright Depo. 20:3-12, Ex. 4 John Seawright Sr. Depo. 30:3-31:10). The EMTs put a brace on the Plaintiffs neck and took him to the emergency room. (Ex.3 Alecia Seawright Depo.

21:1-23:17, Ex. 4 John Seawright Sr. Depo. 33:1-23).  The Plaintiff was examined and ordered by a doctor to stay out of school for two weeks.  (Ex.3 Alecia Seawright Depo. 25:14-19, 28:14-17, Ex. 4 John Seawright Sr. Depo. 38:3-10).  The Plaintiff was prescribed medications for swelling and pain and continues to suffer from neck pain and headaches.  (Ex. 1 J.S. Depo. 111:20-112:3, Ex.3 Alecia Seawright Depo. 26:5-6, Ex. 4 John Seawright Sr. Depo. 36:4-9).

**Legal Argument**.

    **a. Jurisdiction and Venue**

The Court may exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331, 134394) and 1367.  The parties have not contested personal jurisdiction or venue.  The allegations and facts of this matter indicate that all relevant issues take place in the Middle District of Alabama.

    **b. Standard of Review**

Under Rule 56( c ) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The essential issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).  The burden is on the moving party to show the absence of a genuine issue as to any material fact, and in deciding whether the movant has met its burden the court must view the moving party's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party.

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the movant meets its initial burden under Rule 56( c ), the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis omitted) (cited in *Allen v. Tyson Foods, Inc*. 121 F.3d 642, 645 (11th Cir.1997). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985)).

### c. The Plaintiff's Constitutional Claims

Pursuant to 42 U.S.C. §1983, the Plaintiff claims that the Defendant violated his Fourth, Fourteenth and First Amendment rights by unlawfully arresting him without probable cause. Section 1983 provides judicial remedies to a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution. In this case, it is undisputed that at all times relevant the Defendant was acting under color of state law.

The Defendant argues that he is entitled to summary judgment on all claims because of qualified immunity.

The Plaintiff's §1983 claims are three-fold. First, the Plaintiff argues that he was denied his First Amendment right to free speech. He claims that he has a right to express himself in a manner and at a time he deems appropriate. Secondly, the Plaintiff claims that he was unlawfully arrested due to a lack of probable cause. Lastly, the Plaintiff claims the Defendant used excessive force. The

Defendant acted with malice when he unnecessarily choked the Plaintiff around the neck to the point that the Plaintiff passed out.

At the outset, it is important to note that the Constitutional claims are inextricably intertwined. The Eleventh Circuit has explained that when an officer has probable cause to believe that a person is committing an unlawful act, the officer may lawfully arrest the alleged offender, even though the offender is engaged in protected First Amendment activity. *Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir. 1998). As a result, the Plaintiff's First Amendment claim hinges upon the legality of his arrest under the Fourth Amendment. Therefore, it is most appropriate to address whether the Defendant is entitled to qualified immunity for his arrest of the Plaintiff before a discussion of constitutional rights is addressed, however, the two issues do mix to such a point that each is considerate of the other.

### d. Qualified Immunity

"Qualified immunity offers complete protection for governmental officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.2d 1340, 1346 (11th Cir. 2002)( quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818)(1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation mark and citations omitted). See also, *Wood v. Kesler*, 323 F.3d 872 (11th Cir. 2003).

To receive qualified immunity, "the public official must first prove that he was acting within

the scope of his discretionary authority when the allegedly wrongful actions occurred." *Id*. In the instant case, the parties do not dispute that the Defendant was acting within his discretionary capacity when he arrested the Plaintiff. "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id*.

The United States Supreme Court has set a two-part test in order to determine whether a public official is entitled to qualified immunity. The threshold inquiry is, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Brosseau v. Haugen*, 543 U.S. __ (Dec.13, 2004), 125 S.Ct. 596 (2005) [Docket #03-1261] (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquires concerning qualified immunity." *Saucier*, 533 U.S. at 201. However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" *Vinyard*, 311 F.3d at 1346 (quoting *Saucier*, 533 U.S. at 201). Employing this analytical framework, the Plaintiff demonstrates that the Defendant is not entitled to the protections provided through qualified immunity.

**e. Fourth Amendment Claims**

The Plaintiff claims that the Defendant violated his constitutional rights under the Fourth Amendment by unlawfully arresting him without probable cause. The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause. See *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004)(citing *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)). "Probable cause is 'defined in terms of

facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Id.* at 1332.

This Circuit has further defined the issue explaining that qualified immunity requires that the arresting officer have arguable probable cause rather than actual probable cause. "Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry." *Jones v. Cannon*, 174 F.3d 1271, 1283 n. 3 (11th Cir. 1999). Hence, "[i]n the context of a wrongful arrest claim, an officer will be protected by qualified immunity if he had arguable probable cause to effectuate the arrest." *Brown v. Head*, 228 F. Supp. 2d 1324, 1328 (M.D. Ala. 2002). Such an inquiry is objective as the Court must ask whether the Defendant's actions were objective regardless of his underlying motivation or intent. *Montoute*, 114 F.3d at 183.

As previously outlined, because this matter is before the Court on the Defendant's motion for summary judgment, the Court is required to resolve all issues of material fact in favor of the Plaintiff and then answer the legal question of whether the Defendant is entitled to qualified immunity under that version of the facts. *Brown*, 228 F. Supp. 2d at 1328. Pursuant to the Plaintiff's version of the facts, the Defendant did not have arguable probable cause to effectuate the arrest.

The Defendant's motion for summary judgment alleges that the Defendant's probable cause for the arrest was the Plaintiff's obscene hand gesture. The Defendant's motion relies upon the assertion that <u>all</u> obscene gestures are a crime in Alabama. (See Defendant's Motion for Summary Judgment, P.8, Court Doc.#28). Such is not the case.

The Defendant fails to throughly examine the content of the statute and fails to apply well established common law. *Alabama Code* §13A-11-7 defines disorderly conduct as follows:

(a) A person commits the crime of disorderly conduct if, with intent to cause public

8

inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) Engages in fighting or in violent tumultuous or threatening behavior; or

(2) Makes unreasonable noise; or

(3) In a public place uses abusive or obscene language or makes an obscene gesture; or

(4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or

(5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or

(6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.

The primary issue in this case is whether the Defendant had probable cause to believe that the Plaintiff was committing an offense when he made that obscene gesture. The Defendant is claiming that the Plaintiff was in violation of (3) of the disorderly conduct statute for having made an obscene gesture. However, the Defendant ignores (a)'s requirement that such an act be done with the "intent to cause public inconvenience, annoyance or alarm, or recklessly creating risk thereof". The Defendant makes no argument that the Plaintiff demonstrated such intent and fails to articulate how or if the Defendant had such a belief at the time he effectuated the arrest. The Plaintiff's evidence suggests that the Plaintiff was simply talking and playing with family members. Further, the Defendant admits that at all times he believed the obscene gesture was directed at him and not at anyone else.

> Q:   And you're pretty sure that the birds were directed to you?
>
> A:   Yes, sir. I interpreted it to be directed at - -
>
> Q:   Or whoever was driving the police car?

> A:   Yes, sir.
>
> Q:   You're pretty sure as you're sitting here today that he was flipping the bird or birds, multiple birds, at the police car or at the person driving the police car?
>
> A:   Yes, sir.

(Depo. Campbell, P. 73:1-13).

Under the circumstances, the Defendant fails to establish how a possible "<u>public inconvenience, annoyance or alarm</u>" has been created pursuant to the requirement of (a). Further, there is no evidence that the Plaintiff behaved violently, made unreasonable noise, used obscene language, or disturbed a lawful assembly. *See Ala. Code* 13A-11-7 (emphasis added).

Under any conceivable version of the facts, no crime was committed thus; the Defendant did not have arguable probable cause to arrest as the crime of disorderly conduct is defined under the statute. The obscene gesture was not intended to incite or provoke a violent reaction from any of the persons present and did not cause "inconvenience, annoyance or alarm".

The Defendant presents no evidence nor does he make any argument that it is against the law to shoot a bird at an officer. Further, according to the Plaintiff's evidence, at the time he was placed under arrest, the Plaintiff was not combative and certainly did not present the Defendant any reason to believe that he would be a "public inconvenience, annoyance or alarm".

The acts of the Plaintiff were not criminal. This proposition is supported by the Alabama Court of Criminal Appeals in *H.N.P. v. State*, 854 So.2d 630 (Ala.Crim.App. 2003). In *H.N.P.* a minor used obscene language while in a restaurant. The language was overheard by an off-duty officer. When the officer confronted H.N.P. asking her to stop using language she "flipped him off".

*Id*. 631. The officer arrested H.N.P for disorderly conduct. The Court reversed the conviction because no one in the restaurant was provoked into reaction by her conduct. The Court opined,

> "the words "abusive or obscene language" and "obscene gesture" in §13A-11-7 have been narrowly interpreted to apply " 'only to "fighting words." ' " *Robinson v. State*, 615 So.2d 112, 113 (Ala.Crim.App.1992), quoting *Swann v. City of Huntsville*, 455 So.2d 944, 950 (Ala.Crim.App.1984). "Fighting words" are "personally abusive epithets which, when addressed to the ordinary citizen are, as a matter of common knowledge, likely to provoke violent reaction." *Cohen v. California*, 403 U.S. 15, 20, 91 S.Ct. 1780, 29 L.Ed.2nd 284 (1971).
> *Id*. 632.

With regard to the hand gesture, the Court states that it was insufficient to constitute "fighting words" because police officers encounter vulgarities with regularity and they are trained to diffuse potentially volatile situations without physical retaliation. *Id*. "[W]ords which might provoke a violent response from the average person do not, when addressed to a police officer, amount to "fighting words." *Id.* citing *Robinson v. State*, at 114.

The Defendant claims that because he believed that "flipping the bird" was a crime that he should be afforded qualified immunity because he had arguable probable cause. (Defendant's Motion for Summary Judgment, P. 9, Court Doc.#28). However, such an assertion is unsupported at law. A law enforcement officer may not rely upon a mistake of law to create probable cause to effectuate an arrest. *U.S. v. Chanthasouxat*, 342 F.3d 1271, 1277 (11th Cir. 2003)(citing *United States v. Lopez-Soto*, 205 F.3d. 1101, 1106 ( 9th Cir. 2000))( "We also note the fundamental unfairness of holding citizens to 'the traditional rule that ignorance of the law is no excuse,' *Bryan v. United States*, 524 U.S. 184, 196, 118 S.Ct. 1939, 1947, 141 L.Ed.2d 197 (1998), while allowing those 'entrusted to enforce' the law to be ignorant of it." *Id* at 1280.)(see *U.S. v. Ellington*, 396 F.Supp.2d. 695, (E.D.

Va. 2005), referencing *Chanthasouxat*, "a mistake of law *cannot* provide reasonable suspicion or probable cause" at 699)(*emphasis original*).

The Defendant's claims of qualified immunity must be examined in light of existing law. In *Hope v. Pelzer*, 536 U.S. 730 (2002), the Supreme Court modified the Eleventh Circuit's qualified immunity standard to what constitutes a "clearly established" right. According to the Court in *Hope*, "[f]or a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. at 739. Even in novel factual situations when a particular type of conduct has not been specifically adjudicated as unlawful, the Court emphasized that public officials may be on notice that their conduct violates clearly established law. *Id*. at 739. "The [unlawfulness of the action] is clearly established if the 'preexisting law dictates, that is, truly compel[s],' the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances." *Evans v. Stephens*, 407 F.3d 1272, 1282 (11th Cir. 2005).

Qualified immunity shields public officials from liability so long as the right violated was not already clearly established. *Groh v. Ramirez*, 540 U.S. 551, 563 (2004). As seen in *H.N.P, Swann* and others, the Plaintiff had a right to his actions. Further, given the clarity in the law coupled with the firmly entrenched right to be free from a warrantless arrest, it is obvious that the Defendant's conduct in arresting the Plaintiff was unlawful.

The evidence demonstrates that the Defendant lacked arguable probable cause to arrest the Plaintiff for disorderly conduct. See *Brown*, 228 F.Supp.2d at 1329-1330. Also *Webb v. Ethridge*, 849 F.2d 546, 549-50 (11th Cir. 1988)(stating that in the context of an unlawful arrest case where the plaintiff and officers submit conflicting evidence as to the facts surrounding the arrest, the Court

must credit the Plaintiff's version as truthful when the officer moves for summary judgment on qualified immunity grounds). This given, the Defendants claim of qualified immunity must fail.

### f. First Amendment Claim

The Plaintiff alleges that the Defendant violated his constitutional rights under the First Amendment by unlawfully arresting him while the Plaintiff was exercising his right to free speech. The Plaintiff argues that since the Defendant did not have arguable probable cause to effectuate the arrest, he did not have just cause to interfere with the Plaintiff's right to exercise speech. See *Willis v. Siegelman*, 307 F.Supp.2d 1236, 1243 (M.D. Ala. 2004)(Albritton, J.). Ironically, absent his claim of qualified immunity, the Defendant provides no evidence to suggest that the Plaintiff's First Amendment right was not violated.

The Plaintiff's right to protest is well established. A case most significant in this regard is *Cohen v. California*, 403 U.S. 15 (1971), wherein the Court opined that the Fourth and Fourteenth Amendments protect freedom of speech even though such speech might be distasteful to some. *Id*. 25-26. Thus, intentions of the law to limit free speech, even the use of provocative language, must apply only to 'fighting' words 'which by their very utterance.... tend to incite immediate breach of the peace.' *Gooding v. Wilson*, 405 U.S. 518, 518 (1972)(citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031, regarding law limiting speech which on their face are unconstitutional vague and overbroad under the First and Fourteenth Amendments. Pp. 1105-1109). Otherwise, speech is to be protected unless it is "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest". *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).

The Defendant offers no dispute to the Plaintiff's claim that he was exercising his right to

freedom of speech. The Defendant provides no evidence that the Plaintiff's First Amendment rights were not violated. As there is no evidence that the Plaintiff uttered "fighting" words toward the Defendant, the arrest based upon his use of protected speech could be viewed by a reasonable factfinder as a violation of the Plaintiff's First Amendment rights. See *Chaplinsky* 571-72 (fighting words). Accordingly, there is a genuine issue of material fact as to whether a First Amendment violation occurred, the motion for summary judgment filed by the Defendant is due to be dismissed.

### g. Excessive Force

The Plaintiff makes claim that the Defendant used excessive force in effectuating the arrest in violation of his Fourth Amendment right to be free from unreasonable force. In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that whether the use of force in an arrest is reasonable turns on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. In his argument the Defendant concedes that issues of genuine material fact remain as to whether excessive force was used. His argument makes no attempt to elicit facts to dispute the use of force. The Defendant simply relies upon his argument that, regardless of the facts, he is entitled to qualified immunity. (See Defendant's Motion for Summary Judgment, P.6, Court Doc.#28).

As enumerated above, the Plaintiff disputes the Defendant's claim of qualified immunity. Further, the Plaintiff argues that the use of force was excessive to such an extent as to be a violation of the Plaintiff's protected rights. As stated in *Graham*, the use of force must be commensurate with the severity of the crime. *Id.* at 396. The Defendant presents no argument or evidence that the use

of force as alleged by the Plaintiff was necessary under the circumstances to effectuate the arrest. Further, although the Defendant quotes *Graham* in his brief, he does not apply the standard as set out for the use of force. The Defendant simply concludes that the use of reasonable force is justified. He makes no attempt to demonstrate how his use of force was reasonable. This issue is especially interesting in light of the fact that arrest and use of force involved a one-hundred pound, thirteen year old minor, on private property, without a warrant, for a Class "C" misdemeanor. These facts, under *Graham*, must be taken into consideration when making an examination of the reasonableness of the application of force. Lastly, pursuant to requirement of *Graham,* the Defendant makes no representation as to the countervailing governmental interest at stake.

It is important to note that the Plaintiff is not making claim that <u>any</u> unlawful arrest is excessive. The Plaintiff does claim that an unlawful arrest is a violation of his Fourth and Fourteenth Amendment rights. However, he is not making claim that the arrest itself was excessive. Rather, the Plaintiff is claiming that the specific actions taken by the Defendant in employing a neck or choke hold were excessive.

It is understood and *Graham* supports the notion that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. at 396. As enumerated above, the Plaintiff's position is that the arrest lacked arguable probable cause. The Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right to be free from arrest without probable cause. See *Crosby* at 1332. (citing *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)).

### h. State Law Tort Claims

The Plaintiff also brings three common law tort claims; negligence, trespass and assault. The

15

Defendant's motion for summary judgment only directly addresses the claim for assault. Therefore, this response will discuss state tort law claims generally but only directly address assault. Assumably, the Defendant argues that all tort claims are subject to discretionary function immunity.

In his motion for summary judgment the Defendant argues that he is afforded the protection of qualified immunity as to the assault claim. In response, the Plaintiff again relies upon his previously argued position regarding the application of qualified immunity. In short the Defendant argues that the arrest was based upon arguable probable cause, "and therefore cannot be said to be unlawful. Therefore, Plaintiff's assault and battery claims fail." (Defendant's Motion for Summary Judgment, P.12, Court Doc.#28).

"This Court has recognized that a state officer or employee may not escape individual tort liability by arguing that his mere status as a state official cloaks him with the state's constitutional immunity." *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989) (quotations omitted) (quoting *Barnes v. Dale,* 530 So.2d 770, 781 (Ala.1988)). "Clearly, a state officer or employee is not protected by [§ 14](#) when he acts willfully, maliciously, illegally, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law. See *Lumpkin v. Cofield,* 536 So.2d 62, 65 (Ala.1988); *Barnes,* 530 So.2d at 782; *DeStafney v. University of Alabama,* 413 So.2d 391, 393 (Ala.1981); *Gill v. Sewell,* 356 So.2d 1196, 1198 (Ala.1978); *Unzicker v. State,* 346 So.2d 931, 933 (Ala.1977); and *St. Clair County v. Town of Riverside,* 272 Ala. 294, 296, 128 So.2d 333, 334 (1961)." *Id* at 83.

In *Phillips*, the Alabama Supreme Court determined that two issues should be addressed in order to determine whether state officers should be granted immunity. The issues are "1) whether the plaintiffs' suit against the appellees is, in effect, one against the State, thus affording the appellees absolute immunity from suit; and, if not, then 2) whether the appellees are entitled to

substantive or qualified immunity from the plaintiffs' claim because they were engaged in the exercise of a discretionary public function." *Id.* at 83.

First, this lawsuit is not against the state. The Plaintiff is suing the Defendant in his individual capacity. Second, in determining whether the Defendant was engaged in the exercise of a discretionary public function, thus establishing immunity from tort liability, the Alabama Supreme Court adopted the *Restatement (Second) of Torts* § 895D. "In determining whether the public officer was performing a discretionary function, the *Restatement* suggests certain factors to consider: [1] the nature and importance of the function that the officer is performing; [2] the extent to which passing judgment on the exercise of discretion will amount necessarily to passing judgment on the conduct of a coordinate branch of government; [3] the extent to which the imposition of liability would impair the free exercise of discretion by the officer; [4] the extent to which the ultimate financial responsibility will fall on the officer; [5] the likelihood that harm will result to members of the public if the action is taken; [6] the nature and seriousness of the type of harm that may be produced; and [7] the availability to the injured party of other remedies and other forms of relief." *White v. Birchfield*, 582 So.2d 1085, 1088 (Ala.1991).

The Alabama Supreme Court has noted that Ala. Code § 6-5-338(a) "extends discretionary function immunity to municipal police officers . . . unless the officer's conduct is so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." *Couch v. City of Sheffield,* 708 So.2d 144, 153 (Ala. 1998).

In the instant case, the Plaintiff alleges that the Defendant "did grab and purposefully choke Plaintiff around the neck such that Plaintiff was caused to pass out. Defendant handcuffed Plaintiff. Plaintiff was held against his will for approximately twenty minutes. Defendant never charged

Plaintiff with any crime." (Second Amended Complaint, ¶ 13, Court Doc.# 23). The Defendant offers no evidence to refute this claim and he offers no explanation as to how such an action qualifies as a "discretionary public function." The Defendant offers no justification for the force that was used. Because no justification is offered, the Plaintiff is left to assume that the Defendant acted in retaliation to the Plaintiff obscene gesture. Further, the Plaintiff asserts that the Defendant's conduct was purposeful and vindictive and was so egregious that it amounted to willful or malicious conduct. Therefore, the Defendant's assertion that he is entitled to discretionary function immunity is due to be denied.

**Conclusion.**

The Defendant has the burden to show the absence of a genuine issue as to any material fact, and in deciding whether the movant has met its burden the court must view the Defendant's evidence and all factual inferences arising from it in the light most favorable to the Plaintiff. *Adickes at* U.S.144. In his motion for summary judgment the Defendant offers no evidence to refute the facts. In fact, the Defendant offers scant facts only relying upon his qualified immunity argument. On the other hand, the Plaintiff argues that the Defendant's mistake of law in relying upon the alleged belief that the Plaintiff had committed an act of disorderly conduct nullifies any argument the Defendant has to raise arguable probable cause. As such, the Defendant is not afforded the protections of qualified immunity. The Defendant's claim that he is entitled to discretionary function immunity is due to be denied. The above considered there remains genuine issues of material fact. The Defendant's motion for summary judgment is due to be denied. Plaintiff prays that the Court will so rule.

RESPECTFULLY SUBMITTED on this the __13th__ day of July, 2006.

/s/ ANDY NELMS
K. Anderson Nelms
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, AL 36103
(334) 263-7733 (Voice)
(334) 832-4390 (Fax)
Email: andynelms@jaylewislaw.com
ASB-6972-E63K
One of the Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the below named parties or attorneys on this __13th__ day of July, 2006.

Alex L. Holtsford, Jr.
Rick A. Howard

/s/ ANDY NELMS
K. Anderson Nelms
P.O. Box 5059
Montgomery, Alabama, 36104
334-263-7733 (voice)
334-263-7733 (fax)
andynelms@jaylewislaw.com
Attorney for Plaintiff