IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| J.S., *a minor child, by and through his father and next best friend,* John Seawright  ) ) ) ) | |
| Plaintiff,  ) | |
| v.  ) | CASE NO. 2:05-cv-928-WKW |
|   ) | (WO) |
| OFFICER CURT CAMPBELL, *in his individual capacity*,  ) ) ) | |
| Defendant.  ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff J.S. ("Plaintiff"), by and through his father and next friend, John Searight,[1] brings this civil rights action against Defendant Curt Campbell ("Campbell") alleging violations of his constitutional rights secured by the First and Fourth Amendments. (Doc. # 1, Compl.) Plaintiff brings these constitutional claims under 42 U.S.C. § 1983 ("Section 1983") alleging unlawful detention, excessive force, and violation of his right to free speech. Plaintiff also brings pendent state law claims of negligence and assault and battery against Defendant.[2]

This cause is before the court on the Defendant's motion for summary judgment filed on June 16, 2006. (Doc. # 28.) Plaintiff filed a response in opposition to the motion on July 13, 2006 (Doc. # 30), and Defendant filed a reply thereto on July 17, 2006 (Doc. # 32). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the motion for summary judgment is due to be DENIED.

---

[1] The court notes that "Seawright" is spelled incorrectly in the caption of this case. According to Plaintiff and his parents' deposition testimony, the proper spelling of his surname is "Searight."

[2] At the pretrial hearing, counsel for the plaintiff suggested that the state law claims are "subsumed" in the federal claims. Although the court does not adopt this suggestion, the court questions whether this suggestion indicates Plaintiff's intent to abandon his state law claims.

## I. FACTS AND PROCEDURAL HISTORY

This lawsuit stems from a juvenile's use of an obscene hand gesture in the Town of Fort Deposit, Alabama. Although the parties' versions of the incident differ drastically, the summary judgment posture of this case requires this court to consider the submissions of the parties in the light most favorable to the plaintiff as the non-moving party. The evidence presented by the parties, viewed in the light most favorable to the plaintiff, establishes the following facts.

On May 15, 2005, around 7:25 p.m., Plaintiff J.S., a thirteen-year old boy, was standing outside his uncle's house. Plaintiff was talking to some of his friends while some of his adult family members were playing cards. Plaintiff's aunt was standing across the street talking to one of his uncles. Plaintiff heard his aunt mention something about him to his uncle, so he jokingly stuck one of his middle fingers[3] in the air toward her direction.[4] Defendant, a patrolman for the Town of Fort Deposit Police Department, was on patrol in his vehicle when he noticed Plaintiff, standing in the front yard, using the inappropriate hand gesture. Defendant proceeded down the street, turned around and then re-approached the front yard where Plaintiff was located. Defendant parked his vehicle, exited the vehicle, and advanced toward Plaintiff.

According to Plaintiff, Defendant verbally reprimanded him for his conduct. Plaintiff verbally responded[5] and Defendant attempted to place him in handcuffs. Without informing

---

[3] Defendant contends that Plaintiff made the hand gesture with both of his hands. (Doc. # 28, Ex. 2, Def.'s Dep. 33-34; Doc. # 30, Ex. 2, Def.'s Dep. 33-34.)

[4] (Doc. # 28, Ex. 1, Pl.'s Dep. 48-49, 51-53; Doc. # 30, Ex. 1, Pl.'s Dep. 48-49, 51-53.)

[5] The colloquy between Plaintiff and Defendant is somewhat confusing. According to Plaintiff, the following discussion occurred:

Q:   And [Defendant] started talking to you. What did he say when he started talking to you?
A:   He said– I can't remember. He said somebody going to hurt you if you don't change, boy. Then I said hmm. Then I walked off, and then I walked on the other side of the table. And

2

Plaintiff of the reason for the handcuffing, Defendant snatched Plaintiff's hand and grabbed his handcuffs. Plaintiff averted Defendant's grasp and moved away from Defendant. Defendant proceeded toward Plaintiff and placed him in a choke hold.[6] Plaintiff continued to move and Defendant stated: "[B]oy, stop moving, I'll put you to sleep."[7] Plaintiff stopped moving, squatted on the ground, and allowed Defendant to place him in handcuffs.[8] Defendant then took Plaintiff to his police vehicle and stood with Plaintiff next to the vehicle.[9]

---

    then he said, don't open your mouth no more. And I said something else.
                                ***
Q:    What did you say?
A:    I said hmm. . . .
                                ***
Q:    What did you say to [Defendant] the first time when he walked up?
A:    I ain't – Nobody ain't seen my daddy.

(Pl.'s Dep. 57-58.)

[6] Plaintiff testified that Defendant had one arm around Plaintiff's neck and his other arm was holding his hand around Plaintiff's neck. (Pl.'s Dep. 63.)

[7] (Pl.'s Dep. 62.)

[8] Although Plaintiff alleged in the Second Amended Complaint that Defendant choked him until he "pass[ed] out" (Doc. # 23, ¶ 13), Plaintiff testified that he never "pass[ed] out" (Pl.'s Dep. 63). Plaintiff further testified that he was able to breathe while in the choke hold. (*Id*. at 67.)

[9] Defendant vigorously contests Plaintiff's version of the events. According to Defendant's deposition testimony, Plaintiff was disrespectful, hostile, and combative toward him. When Defendant verbally reprimanded Plaintiff for his hand gesture, Plaintiff responded, "I don't care. You ain't my damn daddy." (Def.'s Dep. 39.) Defendant instructed Plaintiff to not use that language and Plaintiff replied, "Fu** you. You ain't my daddy." (*Id*.) Defendant then told Plaintiff to "come on" because he was going to take Plaintiff to the patrol car and transport him to his parents. (*Id*. at 40, 41-42.) Plaintiff responded, "You're not going to do anything to me, and you better not put your hands on me." (*Id*. at 41.) Defendant then attempted to grab Plaintiff's left arm. (*Id*. at 42.) Plaintiff jerked away from Defendant. (*Id*.) Defendant then attempted to grab Plaintiff's left arm again and Plaintiff started swinging at Defendant. (*Id*.) Plaintiff managed to strike Defendant on the left side of his face. (*Id*.) Due to Plaintiff's resistance, Defendant placed him in a choke hold and applied pressure to Plaintiff's neck. (*Id*. at 42-44.) While Plaintiff was in the choke hold, Defendant instructed Plaintiff to "stop fighting, stop resisting, just sit down." (*Id*. at 44.) Plaintiff ultimately complied with Defendant's instructions and Defendant placed him in handcuffs. (*Id*.)

3

Approximately thirty to forty minutes later,[10] Plaintiff's parents arrived on the scene.[11] Plaintiff's father spoke to Defendant and Defendant released Plaintiff.[12] Plaintiff walked home with the assistance of his mother and father.[13] Shortly thereafter, Plaintiff's parents called an ambulance and he was rushed to the hospital.[14] Plaintiff was examined at the hospital, given some prescription medication and sent home. As a result of this incident, Plaintiff suffered back pain, and bruising and swelling of his neck. No criminal charges were filed against Plaintiff relating to this incident.

On September 28, 2005, Plaintiff filed the instant action against the Defendant. (Doc. # 1.) In the Complaint, as amended, Plaintiff alleges three counts. (Doc. # 23.) In the first count, Plaintiff charges that Defendant is liable for damages under Section 1983[15] for violating his constitutional rights under the First and Fourth Amendments[16] to express himself, and to be free from an unlawful detention and excessive force. (*Id.*) In the second and third counts, Plaintiff alleges state law claims of negligence and assault and battery respectively. (*Id.*) Plaintiff requests a jury trial and seeks the

---

[10] According to Defendant, Plaintiff's parents arrived on the scene in less than five minutes. (Def.'s Dep. 47.)

[11] It is unclear whether Defendant forced Plaintiff to remain squatting or standing until Plaintiff's parents arrived. (Pl.'s Dep. 64) ("[Defendant] had me standing by the police car. Then my daddy came."); (*Id.* at 68) (Plaintiff answered "yes" when asked if he "[was] squatting there with [Defendant] for 30 to 40 minutes before his daddy came up.")

[12] Defendant testified that Plaintiff became belligerent when Defendant began releasing him from the handcuffs. (Def.'s Dep. 53-54.) Defendant asserts that Plaintiff threatened to kill Defendant and that Plaintiff's father disciplined him for making the threat by "smack[ing] [Plaintiff] on the head or on the back twice." (*Id.* at 54.)

[13] (Pl.'s Dep. 72.)

[14] (Pl.'s Dep. 78.)

[15] Section 1983 provides judicial remedies to a claimant who can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. § 1983.

[16] In addition, Plaintiff initially alleged violations of his constitutional rights under the Fifth and Fourteenth Amendments. (Doc. # 1, Compl. ¶ 1.) Plaintiff has, however, abandoned these constitutional claims. (*See* Doc. # 23, Second Am. Compl. ¶ 1; Doc. # 11, Pl.'s More Definite Statement ¶ 2.) Hence, only his claims under the First and Fourth Amendments remain in this lawsuit. (Doc. # 40, Pretrial Order.)

following relief: declaratory relief, attorney fees, court costs, punitive damages and compensatory damages. (*Id.*)

## II. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(4) and 1367. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations in support of both personal jurisdiction and venue.

## III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that

there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## IV. DISCUSSION

In moving for summary judgment, Defendant argues that he is entitled to qualified immunity on Plaintiff's constitutional claims. Defendant also argues that he is entitled to discretionary function immunity on Plaintiff's state law claims. The court reviews each issue in turn.

A.   *Constitutional Claims*

Pursuant to Section 1983, Plaintiff claims that Defendant violated his Fourth Amendment and First Amendment rights by unlawfully detaining him without reasonable suspicion.[17] Under the law of the Eleventh Circuit, Plaintiff's First Amendment claim hinges on the legality of his detention under the Fourth Amendment. *See Redd v. City of Enterprise*, 140 F.3d 1378, 1383 (11th Cir. 1998) (explaining that when a police officer has probable cause to believe that a person is committing a particular public offense, the officer may lawfully arrest that person, even though the offender is engaged in protected First Amendment activity); *also Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002) ("[T]he existence of probable cause to arrest [the plaintiff] defeats her First

---

[17] The court will not address the parties' arguments regarding probable cause because the undisputed facts establish that Plaintiff was not arrested. However, the court frequently relies on case law involving the probable cause standard because decisional law regarding the Fourth Amendment applies to Plaintiff's unlawful detention claim.

Amendment claim."). Therefore, the court will initially address whether Defendant is entitled to qualified immunity for Plaintiff's detention. If Defendant is entitled to qualified immunity for the detention, then Plaintiff's First Amendment claim must fail. *Willis v. Siegelman*, 307 F. Supp. 2d 1236, 1241 (M.D. Ala. 2004) (unlawful arrest claim). However, if qualified immunity is not warranted for Plaintiff's Fourth Amendment claim, only then will the court address whether the detention violated Plaintiff's First Amendment rights.

   *1.     General Principles of Qualified Immunity*

"Qualified immunity shields a Section 1983 defendant from liability for harms arising from discretionary acts,[18] as long as the discretionary acts do not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Jackson v. Sauls*, 206 F.3d 1156, 1164 (11th Cir. 2000). To be entitled to qualified immunity, the defendant must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful actions occurred. *See Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006) "Once the defendant[ ] establish[es] that [he was] acting within [his] discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." *Id*.

The United States Supreme Court has set established a two-part test to evaluate whether an official is entitled to qualified immunity. "First, as a threshold inquiry, [the court] must address whether the facts presented, taken in a light most favorable to the non-moving party, establish a constitutional violation." *Bostic*, 458 F.3d at 1303. If the court answers this question in the affirmative, then the court must ask whether the right was "clearly established." *See id*.[19] Hence,

---

[18] Here, it is undisputed that Defendant was within the scope of his discretionary authority at all relevant times.

[19] When case law is needed, only cases from the Supreme Court, Eleventh Circuit or the highest court of the pertinent state clearly establish the law in this Circuit for qualified immunity analysis. *Marsh v. Butler County,* 268 F.3d 1014, 1033 n.10 (11th Cir. 2001) (en banc).

the court must analyze whether Defendant's conduct violated Plaintiff's constitutional rights with respect to each cause of action.

    2.    *Fourth Amendment Claim of Unlawful Detention*

Plaintiff claims that Defendant violated his constitutional rights under the Fourth Amendment by unlawfully detaining him. Defendant asserts that he did not unlawfully detain Plaintiff, but merely engaged in an investigatory stop as permitted under the Fourth Amendment.

"An officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Furthermore, "[w]hile 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Id.* at 123 (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

> A law enforcement official who reasonably but mistakenly concludes that reasonable suspicion is present is still entitled to qualified immunity. When an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop.

*Jackson*, 206 F.3d at 1165-1166.

    a.    *Timing of the Stop*

The court first must examine at what point during the encounter Plaintiff was actually detained. "In order for there to be a sufficient restraint on liberty to elevate an interaction between law enforcement and an individual to constitutional dimensions that trigger Fourth Amendment protection, the police must exert a show of authority that communicates to the individual that his liberty is restrained, meaning he is not free to leave." *United States v. Baker*, 290 F.3d 1276, 1278

(11th Cir. 2002) (citation omitted). *See Terry*, 392 U.S. at 16 ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). "The show of authority can be in several forms, such as 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *Baker*, 290 F.3d at 1278 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). In this case, it is clear that the detention began when Defendant grabbed Plaintiff's arm and restrained him in a choke hold. Accordingly, the court finds that Defendant made a show of authority sufficient to convey to Plaintiff that his liberty was restrained and, therefore, focuses on the constitutionality of that action by Defendant. Thus, the next question before the court is whether Defendant possessed arguable reasonable suspicion for the stop.

        b.        *Arguable Reasonable Suspicion*

As mentioned above, "[a]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois,* 528 U.S. at 123. However, when an officer asserts qualified immunity, as Defendant does here, the issue is not whether reasonable suspicion existed in fact, but whether the officer had "arguable" reasonable suspicion to support an investigatory stop. *See Jackson,* 206 F.3d at 1165-1166.

Defendant points to his own deposition testimony to show that he had arguable reasonable suspicion to detain Plaintiff to investigate the criminal offense of disorderly conduct, as defined

9

under Alabama law.[20] According to Defendant's deposition testimony, he observed Plaintiff use an obscene hand gesture and, after confronting Plaintiff about his conduct, Plaintiff became aggressive and cursed at Defendant. Plaintiff concedes that he used an obscene hand gesture, but argues that such gesture does not constitute criminal activity. Morever, Plaintiff denies Defendant's version of the facts and presents his deposition testimony indicating that he did not use any obscene language, behave violently or act hostile toward Defendant.

Viewing the facts in the light most favorable to Plaintiff, the court concludes that, under Plaintiff's version of the facts, Defendant did not have arguable reasonable suspicion to detain Plaintiff for disorderly conduct. Because the parties' accounts differ as to what occurred on the day in question, the court must give credence to Plaintiff's testimony regarding the event at issue. *See Webb v. Ethridge*, 849 F.2d 546, 549-50 (11th Cir. 1988) (stating that in the context of an unlawful arrest case where the plaintiff and officers submit conflicting affidavits as to the facts surrounding the arrest, the court must credit the plaintiff's version as truthful when the officers move for summary judgment on qualified immunity grounds). According to Plaintiff's evidence, at the time that Defendant detained him Plaintiff had not done anything that would give a reasonable officer the

---

[20] *Alabama Code* § 13A-11-7 defines disorderly conduct as follows:

(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
  (1) Engages in fighting or in violent tumultuous or threatening behavior; or
  (2) Makes unreasonable noise; or
  (3) In a public place uses abusive or obscene language or makes an obscene gesture; or
  (4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or
  (5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or
  (6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.

*Ala. Code* § 13A-11-7(a) (1975). Defendant claims that Plaintiff violated (3) of the disorderly conduct statute. The words "abusive or obscene language" and "obscene gesture" in (3) of the disorderly conduct statute have been narrowly interpreted to apply only to "fighting words." *See H.N.P. v. State*, 854 So. 2d 630 (Ala. Crim. App. 2003).

impression that Plaintiff was violating, had violated, or was about to violate the disorderly conduct statute. Under Alabama law, it is clear that Plaintiff's use of the offensive hand gesture, alone, does not constitute "fighting words," as required for the crime of disorderly conduct. *See H.N.P*, 854 So. 2d at 632.[21] Hence, considering Plaintiff's version of the facts, the Defendant had no basis for his actions. Consequently, the court finds that, under the current state of the law in Alabama, a reasonable police officer would have known that he lacked reasonable suspicion for stopping and detaining Plaintiff and that he was violating clearly established law in doing so.[22] *Jackson*, 206 F.3d at 1166. Accordingly, Defendant is not entitled to qualified immunity on Plaintiff's unlawful detention claim.

---

[21] The court is not persuaded by Defendant's reliance on *Gold v. City of Miami*, 121 F.3d 1442 (11th Cir. 1997). In *Gold*, the Eleventh Circuit found that police officers had arguable probable cause to arrest the arrestee for disorderly conduct. *Id*. at 1446. Although the arrestee in *Gold* merely directed profane language to the police officers and the Florida Supreme Court had held that such conduct did not constitute disorderly conduct under the Florida statute, the Eleventh Circuit found that

> [Due to the] varying views in the Florida appellate courts of what constitutes legally proscribed disorderly conduct . . . [and] [g]iven that what constitutes legally proscribed disorderly conduct is subject to great subjective interpretation of specific facts - for example, the words used, the tone used, the decibels used, and the reaction of onlookers - we are constrained to conclude that a reasonable officer in the same circumstances and possessing the same knowledge as the officers in this case could have reasonably believed that probable cause existed to arrest [the arrestee] for disorderly conduct. The evidence, viewed in the light most favorable to [the arrestee], reflects that [he] used profanities in a loud voice, in a public place, and in the presence of others. *At the time, no cases clearly established that those actions did not constitute legally proscribed disorderly conduct*.

*Id*. at 1446 (emphasis added). Unlike *Gold*, there are no "varying views" in the Alabama appellate courts as to the conduct at issue in the present case. Rather, Alabama case law clearly establishes that use of the hand gesture at issue, *alone*, does not constitute legally proscribed disorderly conduct. *See H.N.P.,* 854 So. 2d at 632 (finding that gesture of "flipping off" the police officer was "vulgar and offensive but insufficient to constitute 'fighting words'"). Accordingly, the court finds that *Gold* is distinguishable from the instant case.

[22] The evidence presented by Plaintiff would not give a reasonable officer any indication that his actions approached the disorderly conduct level. The Supreme Court has recognized that this type of conduct is lawful. *See City of Houston v. Hill*, 482 U.S. 451, 461 (1987) (stating that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers"); *Norwell v. City of Cincinnati*, 414 U.S. 14, 16 (1973) (per curiam) ("Surely, one is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer."). Accordingly, looking at the evidence in the light most favorable to Plaintiff, his conduct, while not laudable, was lawful.

*3.     Fourth Amendment Claim of Excessive Force*

Plaintiff also claims that Defendant violated his constitutional rights by employing excessive force to effect the unlawful detention. The United States Supreme Court has instructed that "*all claims that law enforcement officers have used excessive force–deadly or not–in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard.*" *Graham v. Connor*, 490 U.S. 386, 195 (1989). "It is well established that 'the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Jackson*, 206 F.3d at 1169-1170 (quoting *Graham*, 490 U.S. at 396). "To determine whether the force used is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interest against the countervailing governmental interests at stake." *Id*. (citations omitted). In determining whether an officer's use of force was objectively reasonable, the court also considers "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically." *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000).

Hence, the "[u]se of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-397.

The reasonableness inquiry is also an objective one. '[T]he question is whether the

> officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'

*Jackson*, 206 F.3d at 1170 (quoting *Graham*, 490 U.S. at 397). "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham*, 490 U.S. at 397.

In light of these principles, the court now examines Plaintiff's excessive force claim in the context of the qualified immunity analysis.[23] Plaintiff argues that "the specific actions taken by Defendant in employing a neck or choke hold [in detaining Plaintiff] were excessive." (Pl.'s Br. 15.) Plaintiff produced his deposition testimony as evidence indicating that he resisted Defendant's attempts to detain him, which weighs against Plaintiff in the qualified immunity analysis. On the other hand, Plaintiff did not strike Defendant or pose a threat to Defendant.[24] According to Plaintiff, at no time during these events was he belligerent; he testified that he did not use profanity toward Defendant and did not say anything disrespectful to Defendant.[25] Plaintiff also testified that he was silent while placed in the choke hold and while restrained in the handcuffs.[26] When considered in view of the absence of even an arguably serious crime, these factors weigh against Defendant. If these facts are accepted as true, a rational jury could determine that, given the circumstance, no

---

[23] Notably, Plaintiff does not argue that Defendant used excessive force in detaining him because Defendant lacked a right to detain him at all. Such an excessive force claim is not an independent claim, but rather is subsumed in a plaintiff's illegal seizure claim. *See Bashir v. Rockdale County*, 445 F.3d 1323, 1331 (11th Cir. 2006) ("Under this Circuit's law . . . a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim.") (quotation omitted).

[24] (Pl.'s Dep. 60-61.)

[25] (*Id*. at 67-68.)

[26] (*Id*. at 61-62, 64.)

reasonable officer would have believed that Plaintiff posed an immediate threat to Defendant (or members of the public). Furthermore, it is clearly established law in the Eleventh Circuit that use of force that could cause death or serious harm to effectuate a misdemeanor arrest or detention[27] is excessive under these circumstances. *See Baltimore v. City of Albany*, 2006 WL 1582044, *7 (11th Cir. 2006).

After careful weighing of all the circumstances, Defendant is not entitled to qualified immunity on the excessive force claim. Having considered the facts in the light most favorable to Plaintiff, this court finds that Plaintiff has successfully raised a material issue of fact as to whether a "reasonable officer" would have believed that the level of force employed in this instance was excessive, unnecessary or disproportionate so as to violate the Fourth Amendment. Consequently, the motion for summary judgment is due to denied on Defendant's qualified immunity defense to Plaintiff's excessive force claim.

    *4.      First Amendment Claim*

Plaintiff alleges that Defendant violated his constitutional rights under the First Amendment by unlawfully detaining him while he exercised his right to free speech. Plaintiff argues that, since Defendant did not have reasonable suspicion to detain him, commonsense dictates that he was detained for his expressive hand gesture.

Having made the determination that Defendant is not entitled to qualified immunity in relation to Plaintiff's Fourth Amendment claims, Defendant is not entitled to summary judgment on Plaintiff's First Amendment claim. *See Willis*, 307 F. Supp. 2d at 1243. The court finds that issues

---

[27] Disorderly conduct is a misdemeanor offense in Alabama. *Ala. Code* § 13A-11-7(b) (1975).

of fact exist as to Plaintiff's allegation of a violation of his First Amendment rights.[28] Accordingly, Defendant's motion for summary judgment is due to be denied in relation to Plaintiff's Section 1983 claims.

C.   *State Law Claims*

Plaintiff also alleges state law claims of negligence and assault and battery against Defendant. Defendant asserts that, pursuant to the discretionary function or state-agent immunity provided by *Ala. Code* § 6-5-338 (1975),[29] he is entitled to prevail on Plaintiff's state law claims.

---

[28] Defendant argues that Plaintiff's First Amendment claim fails because Plaintiff's "expression" was in violation of Alabama law. (Def.'s Br. 10.) Contrary to Defendant's argument, Plaintiff's speech was protected under the First Amendment and did not violate Alabama law. *See Hill*, 482 U.S. at 461 (noting that speech is protected unless it is "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest"); *Chaplinsky v. State of New Hampshire,* 315 U.S. 568, 571-72 (1942) ("fighting" words, or words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace," are not protected by the First Amendment); *R.I.T. v. State,* 675 So. 2d 97, 98-100 (Ala. Crim. App. 1995) (juvenile's statement of "fu* * you" to police officer, spoken in front of only family members and as juvenile was walking away from officer, did not constitute "fighting words"). As there is no evidence that Plaintiff uttered "fighting words" toward Defendant, a detention – lacking reasonable suspicion – based upon Plaintiff's use of protected speech could be viewed by a reasonable factfinder as a violation of Plaintiff's First Amendment rights. Moreover, the use of an obscene hand gesture or utterance of a profanity to a police officer by a juvenile is not a crime under present Alabama law. *See R.I.T.*, 675 So. 2d at 100.; *Robinson v. State,* 615 So. 2d 112, 113-14 (Ala. Crim. App. 1992) (no offense committed where defendant shouted at police officer on patrol, "fu* *" and the officer's name, because such did not amount to "fighting words," absent evidence that statement was for purpose of provoking physical retaliation or causing immediate breach of the peace); *H.N.P*, 854 So. 2d at 632 (juvenile's "flipp[ing] off" of police officer did not violate disorderly conduct statute). Accordingly, the court concludes that there is a genuine issue of material fact as to whether a First Amendment violation occurred and whether qualified immunity protects Defendant.

[29] Section 6-5-338 provides in pertinent part as follows:

(a) Every peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, or by an agency or institution, corporate or otherwise, created pursuant to the Constitution or laws of this state and authorized by the Constitution or laws to appoint or employ police officers or other peace officers, and whose duties prescribed by law, or by the lawful terms of their employment or appointment, include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

15

The Alabama legislature has granted statutory immunity from tort liability to municipal police officers for "conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." *Ala. Code* § 6-5-338(a). Such immunity shields a state agent from suit in his or her personal capacity for claims based upon "exercising judgment in the enforcement of the criminal laws of this State, including but not limited to, law-enforcement officers' arresting or attempting to arrest persons(.)" *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).[30] No immunity is available, however, "when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Id*. Therefore, discretionary function immunity shields Defendant from tort liability except to the extent that his detention of Plaintiff for disorderly conduct could reasonably be said to have been willful or malicious conduct, conduct engaged in bad faith, or under a mistaken interpretation of the law.[31]

Under the circumstances in this case, a jury could reasonably determine that Plaintiff's detention occurred due to a mistaken interpretation of the law. According to Defendant, it was his understanding that Plaintiff's usage of the hand gesture at issue constituted "making an obscene

---

*Ala. Code* § 6-5-338 (1975).

[30] The Alabama Supreme Court has recently refined its standard for entitlement to discretionary function immunity, otherwise known as state-agent or state-function immunity. In *Ex parte Butts,* 775 So. 2d 173 (Ala. 2000), the court adopted as its position the "restatement" of the law of state-agent immunity that was advanced by a plurality in *Ex parte Cranman,* 792 So. 2d 392 (Ala. 2000).

[31] This court is mindful that qualified immunity under federal law and discretionary function immunity under Alabama law are not identical; federal immunity employs an objective, reasonable-officer standard, whereas state immunity is a subjective inquiry into what the defendant officers actually believed. *See Scarbrough v. Myles,* 245 F.3d 1299, 1303 n.9 (11th Cir. 2001) (contrasting standards for award of immunity). Consequently, a federal court's finding that defendants are entitled to qualified immunity as to federal claims does not always compel the conclusion that the defendants are entitled to Alabama discretionary function immunity.

gesture" under the disorderly conduct statute.[32] As discussed previously, under Alabama law, the hand gesture at issue does not constitute an "obscene gesture" under Alabama's disorderly conduct statute. Thus, a reasonable jury could find that Defendant had a mistaken interpretation of the law regarding the use of this hand gesture in relation to the disorderly conduct statute. Accordingly, the court must find, at this stage, that Defendant is not entitled to discretionary function immunity in relation to Plaintiff's state law claims. Defendant's motion for summary judgment on Plaintiff's state law claims of negligence and assault and battery is due to be denied

## V. CONCLUSION

For the reasons stated above, it is hereby ORDERED that the motion for summary judgment filed by Officer Curt Campbell (Doc. # 28) is DENIED. Consequently, Plaintiff's Fourth Amendment and First Amendment claims, brought under Section 1983, as well as his negligence and assault and battery claims under state law, alleged against Officer Curt Campbell in his individual capacity, shall proceed to trial.

DONE this 5th day of October, 2006.

                /s/ W. Keith Watkins
                UNITED STATES DISTRICT JUDGE

---

[32] (Def.'s Dep 71-72.)